IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Kevin A. Reilly, | ) | C/A No. 0:12-3503-SB-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Larry Cartledge, *Warden of Perry Correctional* | ) | |
| *Institution*, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Kevin A. Reilly ("Reilly"), a self-represented state prisoner, filed this petition for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant

to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on

the respondent's motion for summary judgment. (ECF No. 21.) Pursuant to Roseboro v. Garrison,

528 F.2d 309 (4th Cir. 1975), Reilly was advised of the summary judgment and dismissal procedures

and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF

No. 22.) Reilly responded in opposition (ECF No. 32) and the respondent filed a reply (ECF No.

33.) Having carefully considered the parties' submissions and the record in this case, the court

concludes that the respondent's motion for summary judgment should be granted and Reilly's

Petition denied.

**BACKGROUND**

Reilly was indicted in April 2005 in Greenville County for three counts of kidnapping (05-

GS-23-3193, -3194, -3195). (App. at 1021-22, 1025-26, 1031, ECF No. 20-8 at 23-24, 27-28, 33.)

He was further indicted in August 2005 in Greenville County for possession of a weapon during the

commission of a violent crime (05-GS-23-3196), conspiracy (05-GS-23-6519), and assault and

battery with intent to kill (05-GS-23-6519).  (App. at 1008, 1011-12, 1017-18, ECF No. 20-8 at 10, 13-14, 19-20.)  Reilly was represented by Thomas Creech, Esquire, and on October 3-7, 2002 was tried by a jury and found guilty as charged.  (App. at 901-02, ECF No. 20-7 at 69-70.)  The circuit court sentenced Reilly to thirty years' imprisonment for each of the three kidnapping charges (each to be served concurrently),  twenty years' imprisonment for assault and battery with intent to kill (to be served consecutively to the kidnapping conviction), five years' imprisonment for possession of a weapon during the commission of a violent crime (to be served consecutively to the kidnapping conviction), and fifteen years' imprisonment for conspiracy (to be served concurrently with the other sentences), for an aggregate sentence of fifty-five years' imprisonment.  (App. at 941-42, ECF No. 20-7 at 77-78.)

Reilly timely appealed and was represented by Kathrine H. Hudgins, Esquire, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed a final brief on Reilly's behalf that presented the following claim:

> Did the trial court err in admitting evidence of an unsuccessful attempt by Reilly to steal money the victim kept in a pig pen at his home as evidence that Reilly was one of three masked men involved with a kidnapping and assault of the victim and his workers while they were clearing land at the Clemson ICAR facility?

(ECF No. 20-11 at 4.)  The State filed a final brief.  (ECF No. 20-12.)  On February 23, 2009, the South Carolina Court of Appeals issued an order affirming the decision of the lower court.  (State v. Reilly, Op. No. 09-UP-095 (S.C. Ct. App. 2009); ECF No. 20-13.)  The remittitur was issued on March 12, 2009.  (ECF No. 20-14.)

Reilly filed a *pro se* application for post-conviction relief ("PCR") on April 21, 2009 in which he raised claims of ineffective assistance of trial counsel and ineffective assistance due to a due process violation.  (Reilly v. State of South Carolina, 09-CP-23-3442; App. at 944-49, ECF No.



20-7 at 80-85.)  Reilly filed a *pro se* amendment to his PCR application in which he alleged that he received ineffective assistance of counsel in that his counsel (1) failed to object to hearsay identification testimony; (2) failed to review discovery materials with Reilly before going to trial; (3) failed to thoroughly investigate his case and meet with Reilly to prepare for trial; and (4) did not allow Reilly to testify at trial.  (ECF No. 20-15.)  The State filed a return.  (App. at 951-56, ECF No. 20-7 at 87-92.)

On May 26, 2010, the PCR court held an evidentiary hearing at which Reilly appeared and testified and was represented by Caroline Horlbeck, Esquire.  By order filed September 20, 2010, the PCR judge denied and dismissed with prejudice Reilly's PCR application.  (App. at 1001-07, ECF No. 20-8 at 3-9.)

Reilly appealed.  On appeal, Reilly was represented by Elizabeth A. Franklin-Best, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed a Johnson[1] petition on Reilly's behalf which presented the following issue:

> Did trial counsel render ineffective assistance of counsel when he did not provide petitioner with his discovery prior to trial?

(ECF No. 20-17 at 3.)  Reilly filed a *pro se* response to the Johnson petition in which he raised the following additional issues:

> Issue 1.     Counsel failed to provide the Applicant a copy of discovery materials pretrial.

---

[1] Johnson v. State, 364 S.E.2d 201 (S.C.1988) (applying the factors in Anders v. California, 386 U.S. 738 (1967) to post-conviction appeals).  Anders requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.  Anders, 386 U.S. at 744.



Issue 2.    Counsel failed to point out to the jury the inconsistent identification testimony given by one alleged co-defendant and other witnesses.

Issue 3.    Counsel failed to object to the use of false testimony used in violation of the Fourteenth Amendment.

Issue 4.    Indictments were unlawfully [ob]tained and information supporting their legitimacy was falsified by the Solicitor.

(ECF No. 20-20.)  On August 10, 2012, the South Carolina Supreme Court issued an order denying Reilly's petition for a writ of certiorari.  (ECF No. 20-21.)  The remittitur was issued August 28, 2012.  (ECF No. 20-22.)  This action followed.

## FEDERAL HABEAS ISSUES

Reilly's federal petition for a writ of habeas corpus raises the following issues:

**Ground One:** The trial court erred in admitting evidence of an unsuccessful attempt by the Petitioner to steal money the victim kept in a pig pen at his home as evidence that the Petitioner was one of three masked men involved with a kidnapping and assault of the victim and his workers while they were clearing land at the Clemson ICAR facility.

**Ground Two:** Ineffective Assistance of Trial Counsel
[1] Trial counsel failed to provide the Petitioner a copy of discovery materials pretrial.
[2] Trial counsel failed to point-out to the Jury the inconsistent identification testimony given by one of the alleged codefendant[]s and other witnesses.
[3] Trial counsel failed to object to the intentional and knowing use of false (perjured) testimony in violation of the Fourteenth Amendment.

**Ground Three:** Prosecutorial Misconduct
[1] The prosecuting Solicitor knowingly and intentionally presented perjured testimony in his case-in-chief.
[2] The prosecuting Solicitor knowingly and intentionally used unlawfully obtained indictments to convey both personal and subject matter jurisdiction upon the criminal court in order to prosecute the Petitioner.

(Pet., ECF No. 1.)

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c)), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the



court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor

can the court assume the existence of a genuine issue of material fact where none exists.  <u>Weller v.

Dep't of Soc. Servs.</u>, 901 F.2d 387 (4th Cir. 1990).

**B.    Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas

corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly

established federal law as decided by the Supreme Court of the United States," or the decision "was

based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding."  28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of

federal law, "a federal habeas court may not issue the writ simply because that court concludes in

its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Williams v. Taylor</u>,

529 U.S. 362, 410 (2000); <u>see</u> <u>also</u> <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011); <u>Humphries

v. Ozmint</u>, 397 F.3d 206 (4th Cir. 2005); <u>McHone v. Polk</u>, 392 F.3d 691 (4th Cir. 2004).  Moreover,

state court factual determinations are presumed to be correct and the petitioner has the burden of

rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long

as 'fairminded jurists could disagree' on the correctness of the state court's decision."  <u>Harrington</u>,

131 S. Ct. at 786 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).  Under the AEDPA,

a state court's decision "must be granted a deference and latitude that are not in operation" when the

case is being considered on direct review.  <u>Id.</u> at 785.  Moreover, review of a state court decision

under the AEDPA standard does not require an opinion from the state court explaining its reasoning.



See id. at 784 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 786. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## C.    Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which



have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.    Summary Judgment Motion**

    **1.    Procedural Bar**

As an initial matter, the respondent argues that the third claim of Ground Two and both claims of Ground Three are procedurally barred from federal habeas review. (ECF No. 20 at 14-17.) Specifically, Reilly alleges that trial counsel failed to object to the intentional and knowing use of false testimony in violation of the Fourteenth Amendment (Ground Two, claim three) and that the prosecuting Solicitor knowingly and intentionally presented perjured testimony in his case in chief and unlawfully obtained indictments to prosecute Reilly (Ground Three, claims one and two). (ECF No. 1 at 12-13, 15-19.) A review of the record indicates that, while these Grounds were presented in Reilly's *pro se* response to the Johnson petition, they were not properly presented to, or ruled upon

by the PCR court as independent issues.[2]  See, e.g., Rule 243(e), SCACR (discussing the content of a petition for writ of certiorari to review PCR actions, including the questions presented for review and that "[t]he argument on each question shall include citation of authority and specific reference to pertinent portions of the lower court record"); Longworth, 377 F.3d at 448 (stating to exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim," i.e., "the ground must be presented face-up and squarely") (internal quotation marks and citation omitted).  Therefore, the court finds that the third claim of Ground Two and both claims of Ground Three are procedurally barred.  See Coleman, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); Picard v. Connor, 404 U.S. 270, 275-76 (1971) (stating that to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the state courts" to give the state courts "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding").  Moreover, these Grounds would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules if Reilly attempted to raise them now.  See Lawrence, 517 F.3d at 714; Longworth, 377 F.3d 437; see also Coleman, 501 U.S. 722.

In response to the respondent's motion for summary judgment, Reilly argues that his procedural default of Ground Two's third claim, and both claims of Ground Three should be excused

---

[2]  There is no indication in the record that Reilly filed a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on any of these allegations. Therefore, even if these grounds were raised in the PCR action, they would not have been preserved for appellate review under state procedural rules.  See Humbert v. State, 548 S.E.2d 862, 866 (S.C. 2001) (holding that an issue muse be raised to and ruled on by the PCR court to be preserved for appellate review); Marlar v. State, 653 S.E.2d 266, 267 (S.C. 2007) ("Because respondent did not make a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on his allegations, the issues were not preserved for appellate review.").



pursuant to Martinez v. Ryan, 132 S. Ct. 1309 (2012).  (ECF No. 32 at 2-5.)  Generally, any errors

of PCR counsel cannot serve as a basis for cause to excuse a petitioner's procedural default of his

claims.  See Coleman, 501 U.S. at 752.  However, in Martinez the United States Supreme Court

established a "limited qualification" to the rule in Coleman.  Martinez, 132 S. Ct. at 1319.  The

Martinez Court held that inadequate assistance of counsel "at initial-review collateral proceedings

may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."

Id. at 1315.  In describing its holding in Martinez, the Supreme Court has recently stated that

> [w]e . . . read Coleman as containing an exception, allowing a federal habeas court
> to find "cause," thereby excusing a defendant's procedural default, where (1) the
> claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the
> "cause" consisted of there being "no counsel" or only "ineffective" counsel during
> the state collateral review proceeding; (3) the state collateral review proceeding was
> the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-
> counsel claim"; and (4) state law requires that an "ineffective assistance of trial
> counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 133 S. Ct. 1911, 1918 (2013) (citing Martinez, 132 S. Ct. at 1318-19, 1320-21);

see also Sexton v. Cozner, 679 F.3d 1150, 1159 (9th Cir. 2012) (summarizing the Martinez test to

require the following:  "a reviewing court must determine whether the petitioner's attorney in the

first collateral proceeding was ineffective under Strickland, whether the petitioner's claim of

ineffective assistance of trial counsel is substantial, and whether there is prejudice").

    As stated above, Martinez is a *limited exception* and its holding applies only to procedural

default of a claim of *ineffective assistance of trial counsel*.  See Banks v. Workman, 692 F.3d 1133,

1148 (10th Cir. 2012).  Accordingly, Martinez cannot provide cause for Reilly's procedural default

of his Ground Three prosecutorial misconduct claims.  See Blanding v. Warden of McCormick Corr.

Inst., C/A No. 8:12-1179-MGL-JDA, 2013 WL 5316613, at *17 (D.S.C. Sept. 20, 2013) (adopting

report and recommendation holding that "claims of trial court error, prosecutorial misconduct, and

ineffective assistance of appellate counsel are not affected by Martinez"); Hilton v. McCall, C/A No. 1:12-1540-TMC, 2013 WL 4017341, at *2 (D.S.C. Aug. 5, 2013) (holding that Martinez is not applicable to claims of prosecutorial misconduct). Therefore, Reilly's Ground Three claims are procedurally barred, as he has failed to "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

Further, to excuse the procedural default of Reilly's ineffective assistance of trial counsel claim (Ground Two, claim three), he must "show that [PCR] counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter." Sexton, 679 F.3d at 1157; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective assistance-of-counsel claims"); Strickland v. Washington, 466 U.S. 668, 687 (1984) (stating to demonstrate ineffective assistance of counsel, a petitioner must show that (1) his counsel was deficient in his representation, i.e. that counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution and (2) he was prejudiced as a result).

In arguing the application of Martinez, Reilly claims that South Carolina's prohibition of dual representation required him "to rely on his initial-review collateral counsel to ensure proper presentment and ruling upon all fundamental constitutional claims at PCR." (ECF No. 32 at 4.) Therefore, Reilly asserts that PCR counsel was ineffective in failing to present his claim of ineffective assistance of trial counsel, and his procedural default of these claims should be excused. Specifically, Reilly appears to allege that PCR counsel was ineffective in failing to raise his claim



that trial counsel failed to object to the intentional and knowing use of false testimony in violation of the Fourteenth Amendment.

Applying Martinez to the record and Reilly's arguments, the court concludes Reilly cannot satisfy Martinez's limited exception. The record reflects that: (1) the disputed testimony concerned the guilt of a co-defendant (App. at 965, ECF No. 20-7 at 101); (2) the State presented a witness to contradict the testimony (App. at 987, ECF No. 20-7 at 123; see also App. at 721, ECF No. 20-5 at 75); and (3) the State disputed the testimony in its closing argument (App. at 891, ECF No. 20-7 at 27; see also App. at 967, ECF No. 20-7 at 103). Further, trial counsel testified at the PCR hearing that he viewed the disputed testimony as a "strength in our case" and that he did not believe an objection to the Solicitor's use of purportedly false testimony would have changed the outcome of the trial. (App. at 987-88, ECF No. 20-7 at 123-24.) The court finds that Reilly cannot demonstrate that this is a substantial claim of ineffective assistance of trial counsel; that PCR counsel was objectively unreasonable in failing to raise this claim; and that, but for PCR counsel's errors, there is a reasonable probability that Reilly would have received relief on his claim of ineffective assistance of trial counsel.

Because Reilly cannot demonstrate that his ineffective assistance of trial counsel claim is substantial and that PCR counsel was ineffective under Strickland in failing to raise it, he cannot establish cause under Martinez excusing the procedural default of this claim. Accordingly, claim three of Ground Two is procedurally barred.

### 2.    Ground One

Reilly argues that the trial court "erred in admitting evidence of an unsuccessful attempt by the Petitioner to steal money the victim kept in a pig pen at his home as evidence that the Petitioner was one of three masked men involved with a kidnapping and assault of the victim and his workers



while they were clearing land at the Clemson ICAR facility." (ECF No. 1 at 4.) For the reasons that follow, the court finds that the trial court's decision did not unreasonably misapply clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

The record of the trial is summarized as follows: one of the victims in this case, Dennis Carroll "George" Arledge, owns a timber removal service ("George"). (App. at 45, ECF No. 20-1 at 47.) On January 15, 2004, three masked men armed with shotguns approached George and two of his employees as they cleared timber for a Clemson research facility and bound their hands with handcuffs or duct tape. (App. at 46, 49-50, ECF No. 20-1 at 48, 51-52.) A fourth employee drove onto the site and one of the masked men fired a gun. (App. at 51, ECF No. 20-1 at 53.) The bullet penetrated the truck's door, striking the driver. (App. at 52, ECF No. 20-1 at 54.) At the time of the incident, George lived with his wife, Anne Bynre Arledge ("Anne"). (App. at 71, ECF No. 20-1 at 73.) Anne testified at trial to an addiction to oxycontin, which she would trade for methadone to a man named Curt Wooten ("Wooten"). (App. at 75, ECF No. 20-1 at 77.) Anne further stated that she and Wooten had three or four conversations about money hidden by George on his property. (App. at 75-77, ECF No. 20-1 at 77-79.) Wooten testified to selling and trading drugs with Anne, and indicated that the two discussed money George kept hidden in a pig pen. (App. at 83-84, ECF No. 20-1 at 85-86.) Wooten testified that he provided information about the hidden money to Reilly. (App. at 84, ECF No. 20-1 at 86.)

The State sought to present evidence that Reilly attempted to steal the money hidden in the pig pen on prior occasions. The defense made a pre-trial motion to suppress the evidence and the court held a suppression hearing. At the conclusion of the suppression hearing, the trial court ruled the evidence admissible, stating:



As to the issue of the 404(B) evidence, I'm going to allow it in under the basis that it constitutes res gestae, and I'm relying on the case of <u>State v. Adams</u>, which incorporated <u>United States v. Masters</u>, which was a Fourth Circuit opinion. And it is res gestae because it does provide the context for the crime. It gives a full picture to the jury. I find the probative value of the evidence outweighs its prejudicial effect . . . . as to the previous alleged visits to the house, that to me rises to the level of <u>State v. Good</u> and <u>State v. Ford</u>, which allowed similar evidence. In those cases the court held that when there were prior incidents that targeted the same victim over a period of time, they could be admissible under <u>Lyle</u>.[3] I think they're more properly admissible under res gestae, but the difference is unclear under the case law unfortunately. But certainly it shows that these events were interwoven. And they're not just similar. They are interwoven and it is an attempt to target the same victim, showing the same course of conduct and trying to allegedly rob the same person, which I think was the facts in <u>State v. Good</u> and <u>State v Ford</u>.

(App. at 234-35, ECF 20-2 at 50-51.) The court further found the "evidence of the <u>Lyle</u> issues are demonstrated by clear and convincing evidence . . . ." (App. at 238, ECF No. 20-2 at 54.) At trial, witnesses testified, over the defense's objection, about incidents where Reilly went to George's home in an attempt to lure him away and force him to disclose the location of the hidden cash, or to locate the money by placing George under surveillance. (Tarsha Mondor, App. at 552, ECF No. 20-4 at 54); (Curt Wooten, App. at 628-30, ECF No. 20-4 at130-32); (Cary Sanders, App. at 655, ECF No. 20-5 at 9); (Johnny Blake Sanders, App. at 717, ECF No. 20-5 at 71); (Larkin Bridges, App. at 835, 838, ECF No. 20-6 at 65, 68). In addition, George Arledge testified that Reilly had visited his house four times prior to the incident on January 15, 2004. (App. at 286, ECF No. 20-2 at 102.)

On direct appeal, Reilly argued that the "prior attempt to steal money at Arledge's house does not constitute the res gestae of kidnapping and assault that took place miles away" on January 15,

---

[3] <u>State v. Lyle</u>, 118 S.E. 803, 807 (S.C. 1923) (noting exceptions to the "general rule, universally recognized and firmly established in all English-speaking countries, that evidence of other distinct crimes committed by the accused may not be adduced merely to raise an inference or to corroborate the prosecution's theory of the defendant's guilt of the particular crime charged").



2004, and the "prior attempt is not so linked with the charged kidnapping and assault so that proof

of one cannot be shown without proof of the other." (ECF No. 20-11 at 10-11.) Reilly further

argued that the evidence of prior bad acts "does not fit an exception under Rule 404(B) and Lyle"

and the "mere fact that two crimes may involve the same victim does not, without more, qualify for

an exception under Lyle and 404(B)." (Id. at 11.) Reilly claimed that the prior bad act "does not

establish a retaliatory motive as discussed in Good," and "did not establish a conspiracy." (Id. at 12.)

Thus, Reilly alleged that the trial court erred in admitting the evidence, requiring reversal of his

convictions. (Id. at 13.)

The South Carolina Court of Appeals rejected Reilly's argument pursuant to South Carolina

state law, holding:

> Reilly maintains the trial court erred in allowing the State to introduce evidence of
> a prior bad act. We affirm[] pursuant to Rule 220(b), SCACR, and the following
> authorities: Rule 404(b), SCRE ("Evidence of other crimes, wrongs, or acts is not
> admissible to prove the character of a person in order to show action in conformity
> therewith. It may, however, be admissible to show motive, identity, the existence of
> a common scheme or plan, the absence of mistake or accident, or intent."); State v.
> Wilson, 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001) ("If there is any evidence to
> support the admission of the bad act evidence, the trial [court's] ruling will not be
> disturbed on appeal."); State v. Jenkins, 322 S.C. 414, 416, 472 S.E.2d 251, 252
> (1996) (allowing evidence under the common plan or scheme exception where a
> close degree of similarity or connection existed between the bad act and the crime
> charged which enhanced the probative value of the evidence).

(ECF No. 20-13 at 2.)

In response to respondent's motion for summary judgment, Reilly argues that the prior bad

act testimony "does not fit an exception under Rule 404(B), SCRE and Lyle." (ECF No. 32 at 12.)

Reilly also argues that the evidence "did not establish the conspiracy," and "was not necessary to

prove or establish any of the elements of the offenses being tried." (Id. at 13-14.) Reilly asserts that

the trial court's erroneous and unreasonable application of "Rule 403 and 404, SCRE" constitutes



an "abuse of discretion" and "a prejudicial error of law to such extent as to impugn the principles of fundamental fairness" under the Sixth Amendment, depriving him of due process. (Id. at 10, 14, 17.)

"It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Furthermore, "in considering federal habeas corpus issues involving state evidentiary rulings, 'we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.' " Barbe v. McBride, 521 F.3d 443, 452 (4th Cir. 2008) (quoting Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000)). Upon review of all of the filings in this matter and the record before the court, the court finds that Reilly cannot demonstrate that the state trial court and appellate court misapplied federal law, or that the alleged evidentiary error, if one even exists, was so extreme as to deny Reilly a constitutionally fair proceeding.  Reilly cannot satisfy the standard in Barbe.  Therefore, Reilly is not entitled to habeas relief on this ground.

### 3.     Ground Two

Reilly argues that trial counsel was ineffective in: (1) failing to provide a copy of discovery materials pretrial, and; (2) failing to point out inconsistent identification testimony given by one of the alleged co-defendants and other witnesses.  (ECF No. 1 at 6-8, 9-11.)

### a.     Controlling Law Regarding Allegations of Ineffective Assistance of Counsel

A defendant has a constitutional right to the effective assistance of counsel.  To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his



representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution.  With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  Prejudice may be presumed when (1) a defendant is completely denied counsel at a critical stage of his trial, (2) counsel "entirely fails to subject the prosecution's case to a meaningful adversarial testing," or (3) "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." United States v. Cronic, 466 U.S. 648, 659 (1984).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 131 S. Ct. 770, 788 (2010).  The Court observed that while " '[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)).  The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted).  Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions



were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

Although the Supreme Court has held that a decision containing a reasoned explanation is not required from the state court, in the case at bar this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court.  See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (indicating that when a state appellate court affirms a lower court decision without reasoning, the court may look through the later, unreasoned, summary disposition and focus on the last reasoned decision of the state court).  Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.

### b.    PCR Court Testimony and Findings

#### i.    Failure to Provide Discovery Materials

At the PCR hearing, Reilly testified that he never received discovery materials from trial counsel.  (App. at 963, ECF No. 20-7 at 99.)  Reilly stated that he had a different attorney prior to trial counsel's representation, and assumed that trial counsel mistakenly believed that Reilly's previous attorney provided discovery to him.  (App. at 963-64, ECF No. 20-7 at 99-100.)  Reilly testified that his first defense attorney did not provide full discovery, but did show him some documents, although Reilly could not specifically remember what documents they reviewed.  (App. at 978, ECF No. 20-7 at 114.)  Reilly testified that he did not remember whether he requested discovery from trial counsel prior to the trial.  (App. at 964, ECF No. 20-7 at 100.)  However, Reilly stated that he did request discovery materials after his trial, which trial counsel provided.  (Id.) Reilly further testified that he and trial counsel discussed Reilly's version of the facts of the case and



that trial counsel went over some, but not all, of the police reports and statements in the case.  (App. at 978-79, ECF No. 20-7 at 114-15.)

Trial counsel testified that he was appointed to represent Reilly and received discovery materials from both Reilly's previously retained counsel and the State.  (App. at 981, ECF No. 20-7 at 117.)  Trial counsel indicated that the State had no physical evidence and based its case on testimonial evidence and statements.  (App. at 982, ECF No. 20-7 at 118.)  Trial counsel testified that he reviewed the discovery materials with Reilly, to include statements from victims and co-defendants expected to testify at trial.  (App. at 981-82, ECF No. 20-7 at 117-18.)  Trial counsel further testified that Reilly provided his version of the facts in preparation for trial.  (App. at 982, ECF No. 20-7 at 118.)

In rejecting Reilly's claims of ineffective assistance of trial counsel associated with a failure to provide discovery materials, the PCR court found that Reilly's testimony was not credible, and that trial counsel's testimony was credible.  (App. at 1001, ECF No. 20-8 at 6-7.)  Moreover, the PCR court held:

> This Court finds the Applicant failed to meet his burden of proving trial counsel failed to review discovery materials with him before trial.  Trial counsel testified he received full discovery in this case and reviewed all of those materials with Applicant.  Trial counsel specifically testified they reviewed both the co-defendants' statements and the Applicant's account of what happened.  This Court finds this is credible testimony.  This Court notes the Applicant has failed to articulate what materials were withheld from him—and any possible reason for withholding those items—and how it prejudiced his case.

(App. at 1005, ECF No. 20-8 at 7.)

In addition, the PCR court made the following remarks at the PCR hearing regarding Reilly's discovery claims:

> [Discovery] was received—[trial counsel] certainly didn't have any basis to withhold that from you.  Certainly, his testimony doesn't indicate that he did.  In order to



> prepare for trial, you had to have discussed the case that was being brought against you by the State. If, in fact, y'all did not go over each and every piece of paper, the question becomes was that deficient and if, in fact, it was deficient, would it prejudice you in any meaningful way. This was a five-day trial. Obviously, all the evidence was put into the record. You had the opportunity to review it. Obviously, you and [trial counsel] had to prepare for trial. He wasn't deficient because he indicates that he did go over discovery with you. Even if he didn't go over it with you to the extent that you may think is appropriate, he didn't prejudice you in any meaningful way.

(App. at 998, ECF No. 20-7 at 134.)

Thus, the PCR court held that Reilly failed to establish any constitutional violations "before or during his trial and sentencing proceedings. Counsel was not deficient in any manner, nor was [Reilly] prejudiced by counsel's representation." (App. at 1007, ECF No. 20-8 at 9.)

### ii.     Failure to Point Out Inconsistent Testimony

At the PCR hearing, Reilly testified that one witness, Johnny Sanders ("Sanders"), testified at trial that an individual named Kenny Gleason participated in the crimes for which Reilly was tried. (App. at 974-75, ECF No. 20-7 at 110-11.) Reilly stated that another witness, co-defendant Larkin Bridges ("Bridges"), identified Sanders as the third participant in the crime during trial testimony. (App. at 975, ECF No. 20-7 at 111.) Reilly alleged that trial counsel failed to point out Bridges's inconsistent testimony. (App at 976, ECF No. 20-7 at 112.) Reilly testified that he believes his case was prejudiced by trial counsel's failure to attack the witnesses' credibility. (Id.) Reilly admitted that he did not discuss the inconsistent testimony with trial counsel during trial, but discovered the alleged error while reading the trial transcript in prison. (App. at 980, ECF No. 20-7 at 116.)

Trial counsel testified at the PCR hearing that there were definite inconsistencies in Bridges's testimony at trial, which trial counsel pointed out to the jury. (App. at 984, ECF No. 20-7 at 120.) Trial counsel further testified that he pointed out Bridges's criminal record to the jury. (Id.) Trial counsel stated that the credibility of the co-defendants was important, and it was apparent from



discovery materials that Sanders had not been present at the crime scene.  (App. at 985-86, ECF No.

20-7 at 121-22.)  Trial counsel testified that this should have been a concern to the State; however,

trial counsel considered Bridges's inconsistent testimony to be a strength in Reilly's case.  (App. at.

986-87, ECF No. 20-7 at 122-23.)  In addition to the State disputing Bridges's testimony in its

closing argument, trial counsel testified that the State may have presented a witness, Sanders, to

contradict Bridges's testimony.  (App. at 987, ECF No. 20-7 at 123.)

      In rejecting Reilly's claim that trial counsel failed to point out inconsistent witness statements

to the jury, the PCR court held:

> This Court finds the Applicant did not meet his burden of proving trial counsel failed
> to adequately attack his co-defendants' credibility at trial.  This Court finds trial
> counsel pointed out inconsistencies in the co-defendants' testimony—both on cross-
> examination and during closing argument.  This Court notes that it is not necessary
> to point out each and every inconsistency or omission in a witness's testimony.  The
> jury can clearly ascertain these purported contradictions in testimony.  This Court
> further notes that it is often a benefit to one's case to simply point out the variances
> and comment on the lack of witness credibility.  This Court finds trial counsel
> highlighted the inconsistencies in the State's case to the jury, who weighed the
> evidence in their deliberations.  See State v. Pipkin, 359 S.C. 322, 327, 597 S.E.2d
> 831, 833 (Ct. App. 2004) (noting jury is "the finder of fact and weigher of
> credibility").  It is clear that regardless of the strong arguments made by trial counsel,
> the jury simply did not accept the defense's version of events.  See Craven v.
> Cunningham, 292 S.C. 441, 443, 357 S.E.2d 23, 25 (1987) ("The credibility of
> witnesses is for the triers of fact."); see also Bruno v. State, 347 S.C. 446, 556 S.E.2d
> 393 (2001) (noting that, by its verdict, the jury clearly rejected the defendant's
> account of what transpired).  The Applicant failed to point out any errors by trial
> counsel in this regard that prejudiced his case.

(App. at 1005-06, ECF No. 10-8 at 7-8.)

      The PCR court further remarked during the PCR hearing:

> Now, it looks to me like the credibility of the witnesses was at issue in this case.  I
> don't know how much more clearly Mr. Creech could have addressed it when he
> goes in closing argument and [] he basically says, they are, Ladies and Gentlemen,
> burglars, they are thieves, they're robbers, they are folks you wouldn't trust at all,
> they are folks that we should be afraid of, they are folks that belong in the
> Department of Corrections, they are people that smoke marijuana, people that drink



alcohol come in and testify to crucial events in this case and told all of us that they were under the influence of alcohol and drugs while they were proceeding the events in this case. How is that proof beyond reasonable doubt? We would laugh at them at any other place, maybe news of the weird. So I don't know how much strongly he could have said these are not credible witnesses.

(App. at 996-97, ECF No. 20-7 at 132-33) (paraphrasing App. at 898, ECF No. 20-7 at 34.)

Accordingly, the PCR court held that Reilly "failed to prove the first prong of the <u>Strickland</u> test—that trial counsel failed to render reasonably effective assistance under prevailing professional norms" and "failed to prove the second prong of <u>Stickland</u> – that he was prejudiced by trial counsel's performance." (App. at 1006, ECF No. 20-8 at 8.)

### c.    Conclusion

Upon thorough review of the parties' briefs and the record in this matter, the court finds that Reilly cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual findings. <u>See</u> <u>Williams</u>, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). As observed by the <u>Harrington</u> court, "[t]he pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable. This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard." <u>Harrington</u>, 131 S. Ct. at 785.

In response to the respondent's motion for summary judgment, Reilly essentially reiterates facts already presented to the South Carolina Supreme Court as support for his claims of ineffective assistance of counsel.[4]   (ECF No. 32 at 18-27.) Reilly further challenges the PCR court's order finding that his testimony was not credible. However, Reilly has not clearly shown that the credibility determination in the PCR court's order is without support. <u>See</u> <u>Elmore v. Ozmint</u>, 661

---

[4] (<u>See</u> ECF No. 20-20 at 5-16) (Reilly's *pro se* response to the <u>Johnson</u> petition).



F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting <u>Sharpe v. Bell</u>, 593 F.3d 372, 378 (4th Cir. 2010) and <u>Cagle v. Branker</u>, 520 F.3d 320, 324 (4th Cir. 2008)).

Upon careful review of the transcript and the PCR court's order, for all of the reasons discussed by the PCR court, the court concludes that Reilly has failed to establish that trial counsel's actions were error, much less that they were objectively unreasonable such that it rendered his performance deficient.  Therefore, Reilly has not shown that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable. <u>See</u> <u>Williams</u>, 529 U.S. at 410; <u>see also</u> <u>Harrington</u>, 131 S. Ct. at 785.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 21) be granted.

January 24, 2014
Columbia, South Carolina

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).