IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

USDC. CLERK RECEIVED
COLUMBIA, SC

2014 SEP 17 P 2: 16

Kevin A. Reilly,                    )
                                    )
            Petitioner,             )
                                    )        Civil Action No. 0:12-3503-SB
v.                                  )
                                    )
Larry Cartledge, Warden of Perry    )        **ORDER**
Correctional Institution,           )
                                    )
            Respondent.             )
_____)

This matter is before the Court on Kevin A. Reilly's ("Reilly" or "the Petitioner") pro

se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., the matter was referred to a United States Magistrate

Judge for preliminary review. On January 27, 2013, the Magistrate Judge issued a report

and recommendation ("R&R"), analyzing the issues and recommending that the Court

grant the Respondent's motion for summary judgment and deny Reilly's petition. Attached

the R&R was a notice advising the parties of the right to file written, specific objections to

the R&R within fourteen days of receiving a copy. The Petitioner filed two motions for

extensions of time to file objections, both of which the Court granted. As of March 21,

2014, the Court had not received objections from the Petitioner. Therefore, the Court

entered an order adopting the R&R, granting the Respondent's motion for summary

judgment, and denying Reilly's section 2254 petition.

Subsequently, on April 7, 2014, the Court received a copy of the Petitioner's

objections, which were dated February 25, 2014. Also on April 7 the Court received a

motion from Reilly asking the Court to set aside its March 21 order and consider his

objections based on the fact that he deposited them in his institution's mail processing system in a timely manner. Indeed, the envelope attached to Reilly's objections is stamped as "received" in the P.C.I. mail room on February 25, 2014, even though–for some unknown reason–it was not "received" by this Court until April 7, 2014. In the interest of fairness, the Court grants Reilly's motion to set aside the March 21 order and judgment (Entry 49). The Court will consider the Petitioner's objections and will conduct a de novo review of any portion of the R&R to which the Petitioner has objected.

## BACKGROUND

Reilly was indicted in Greenville County in April of 2005 for three counts of kidnapping; in August of 2005, he was also indicted in Greenville County for possession of a weapon during the commission of a violent crime, conspiracy, and assault and battery with intent to kill. Reilly proceeded to trial from October 3 to 7, 2006, and he was represented by Thomas Creech, Esquire. On October 7, 2006, the jury convicted Reilly of all six charges, and the court sentenced him to thirty years' imprisonment for each of the kidnapping convictions, to be served concurrently; twenty years' imprisonment for the assault and battery with intent to kill conviction, to be served consecutive to the kidnapping sentences; five years' imprisonment on the charge for possession of a weapon during the commission of a violent crime, to be served consecutive to the kidnapping and the assault and battery with intent to kill sentences; and fifteen years' imprisonment on the conspiracy conviction, to be served concurrently to all other sentences. Altogether, the Petitioner received fifty-five years of confinement.

Reilly filed a timely notice of appeal and was represented by Katherine H. Hudgins, Esquire, Appellate Defendant with the South Carolina Commission on Indigent Defense,

2

Division of Appellate Defense, who filed a final brief alleging the following claim:

> Did the trial court err in admitting evidence of an unsuccessful attempt by Reilly to steal money the victim kept in a pig pen at his home as evidence that Reilly was one of three masked men involved with a kidnapping and assault of the victim and his workers while they were clearing land at the Clemson ICAR facility?

(Entry 20-11 at 4.) On February 23, 2009, the South Carolina Court of Appeals issued an order affirming the lower court's decision, and the remittitur was issued on March 12, 2009.

On April 21, 2009, Reilly filed a pro se application for post-conviction relief ("PCR"), in which he raised claims of ineffective assistance of trial counsel and ineffective assistance due to a due process violation. (See Reilly v. State of South Carolina, 09-CP-23-3442; Entry 20-7 at 80-85.) Reilly filed a pro se amendment to his PCR application, alleging that he received ineffective assistance of counsel because counsel (1) failed to object to hearsay identification testimony; (2) failed to review discovery materials with Reilly prior to trial; (3) failed to thoroughly investigate the case and meet with Reilly to prepare for trial; and (4) failed to allow Reilly to testify at trial. (See Entry 20-15.)

On May 26, 2010, the PCR court held an evidentiary hearing at which Reilly appeared and testified and was represented by Caroline Horlbeck, Esquire. In an order filed September 20, 2010, the PCR judge denied and dismissed with prejudice Reilly's PCR application. (See Entry 20-8 at 3-9.)

Reilly filed an appeal, and on appeal he was represented by Elizabeth Franklin-Best, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed a Johnson petition on Reilly's behalf raising the following issue: "Did trial counsel render ineffective assistance of counsel when he did not provide petitioner with discovery prior to trial?" (Entry 20-17 at 3.) See Johnson v. State, 364

3

S.E.2d 201 (1988) (applying the factors of <u>Anders v. California</u>, 386 U.S. 738 (1967), to post-conviction appeals).

Reilly filed a <u>pro se</u> response to the <u>Johnson</u> petition in which he raised the following additional issues:

Issue 1.    Counsel failed to provide the Applicant a copy of discovery materials pretrial.

Issue 2.    Counsel failed to point out to the jury the inconsistent identification testimony given by one alleged co-defendant and other witnesses.

Issue 3.    Counsel failed to object to the use of false testimony used in violation fo the Fourteenth Amendment.

Issue 4.    Indictments were unlawfully [ob]tained and information supporting their legitimacy was falsified by the Solicitor.

(Entry 20-20.) On August 10, 2012, the South Carolina Supreme Court issued an order denying Reilly's petition for a writ of certiorari, and the remittitur was issued on August 28, 2012.

On December 12, 2012, Reilly filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising the following grounds:

**Ground One:**    The trial court erred in admitting evidence of an unsuccessful attempt by the Petitioner to steal money the victim kept in a pig pen at his home as evidence that the Petitioner was one of three masked men involved with a kidnapping and assault of the victim and his workers while they were clearing land at the Clemson ICAR facility.



**Ground Two:**    Ineffective assistance of trial counsel.

(a) <u>Supporting Facts:</u>

[1] Trial counsel failed to provide the Petitioner a copy of discovery materials pretrial.

4

. . .

[2] Trial counsel failed to point[ ]out to the Jury the inconsistent identification testimony given by one of the alleged codefendant[ ]s and other witnesses.

. . .

[3] Trial counsel failed to object to the intentional and knowing use of false (perjured) testimony in violation of the Fourteenth Amendment.

. . .

**Ground Three:**    Prosecutorial Misconduct.

(a) Supporting Facts:

[1] The prosecuting Solicitor knowingly and intentionally presented perjured testimony in his case-in-chief.

. . .

[2] The prosecuting Solicitor knowingly and intentionally used unlawfully obtained indictments to convey both personal and subject matter jurisdiction upon the criminal court in order to prosecute the Petitioner.

(Entry 1 at 4, 6-7, 9, 12, and 15.)

## STANDARDS OF REVIEW

### I.    The Magistrate Judge's R&R

This Court is charged with conducting a de novo review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636 (b)(1). Any written objection must specifically identify the portions of the R&R to which objections are made and the basis for those objections. Id.

## II.    Legal Standard for Summary Judgment

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. See Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

## I.    Habeas Corpus

### *Generally*

Because the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

6

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court explained that section 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. <u>Id.</u> at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in controlling cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. <u>Id.</u> at 405-06. A federal habeas court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. <u>Id.</u> at 407-08. Factual determinations made by the state "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### Exhaustion of Remedies and Procedural Bar

Relief under section 2254 may be had only after a habeas petitioner has exhausted his state court remedies. "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997), <u>cert. denied</u>, 522 U.S. 833 (1997). In the interest of giving state courts the first opportunity to consider alleged constitutional errors in state proceedings, a section 2254 petitioner is required to "exhaust" all state remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

To exhaust a claim in state court, a person in custody has two primary means of attacking his conviction: filing a direct appeal and/or filing an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10–160. If the

7

PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must file a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. Marlar v. South Carolina, 375 S.C. 407, 653 S.E.2d 266, 267 (2007); see also Marlar v. Warden, Tyger River Correctional Inst., 432 F. App'x 182, 186-88 (4th Cir. May 25, 2011). "[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies." In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 321 S.C. 563, 564 (1990).

When a federal habeas petitioner has failed to raise a claim at the appropriate time in state court and has no further means of bringing that issue before the state courts, the claim will be considered procedurally defaulted, and he will be procedurally barred from raising the issue in his federal habeas petition. Smith v. Murray, 477 U.S. 527, 533 (1986). Procedural default can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a federal habeas petitioner has procedurally defaulted his opportunity for relief in the state courts, the exhaustion requirement is technically met and the rules of procedural bar apply. See Matthews, 105 F.3d 907 (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991), Teague v. Lane, 489 U.S. 288, 297-98 (1989), and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996)). Thus, where the state court has not had the opportunity to apply its own procedural bar, the federal court will nevertheless bar the claim where application of the bar is clear. Teague, 489 U.S. at 297-98.

8

Nevertheless, because the requirement of exhaustion is not jurisdictional, a federal court may consider claims that have not been presented to the highest South Carolina court with jurisdiction in very limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). Specifically, a federal court will review a procedurally defaulted claim if the petitioner can demonstrate sufficient cause for the default and actual prejudice resulting from the failure, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478, 495-96 (1986).

"Cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. Turner v. Jabe, 58 F.3d 924, 931 (4th Cir.1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. A petitioner must show an actual and substantive disadvantage as a result of the error, not merely the possibility of harm.

As an alternative to demonstrating cause for failure to raise a claim, a petitioner may show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show that he is actually innocent. See Murray, 477 U.S. at 496 (holding that a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation

9

has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. Bousley v. United States, 523 U.S. 614, 623 (1998).

### Ineffective Assistance of Counsel

A meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-98 (1984). The first part of the test, a court's evaluation of counsel's performance, must be "highly deferential" under this standard, so as not to "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Fields v. Attorney General of Maryland, 956 F.2d 1290, 1297-99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1476 (4th Cir. 1985). To establish prejudice and thereby fulfill the second prong of the ineffective assistance test, the challenging defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694-95.

### IV.    Reilly's Claims

### Procedural Default: Claim Three of Ground Two and Claims One and Two of Ground Three

In the R&R, the Magistrate Judge first evaluated the Respondent's argument that the third claim of ground two (alleging that trial counsel failed to object to the intentional

10

use of false testimony in violation of the Fourteenth Amendment) and both claims of ground three (alleging that the prosecutor knowingly presented perjured testimony and that the prosecutor knowingly obtained unlawful indictments) were procedurally barred from federal habeas review. After considering the record, the Magistrate Judge determined that although Reilly raised these issues in his pro se response to the Johnson petition, he did not properly raise them before the PCR judge, and the PCR judge did not rule upon them as independent issues. In addition, the Magistrate Judge noted that there is no indication that Reilly filed a Rule 59(e) motion asking the PCR court to make specific findings of fact and conclusions of law on these claims.[1] Therefore, the Magistrate Judge agreed with the Respondent that even if Reilly had properly raised these issues before the PCR court, they were not preserved for appellate review under the state procedural rules and are procedurally barred.

Next, the Magistrate Judge considered Reilly's argument that the Court should excuse the procedural default of the third claim of ground two and both claims of ground three pursuant to Martinez v. Ryan, – U.S. –, 132 S.Ct. 1309, 1315 (2012).

In Martinez, the Supreme Court established a "limited qualification" to its statement in Coleman that an attorney's ignorance or inadvertence in a post-conviction proceeding does not qualify as cause to excuse a procedural default by holding that "[i]neffective assistance of counsel at initial-review collateral proceedings may establish cause for a



---

[1] The Fourth Circuit has noted that, prior to the decision of the South Carolina Supreme Court in Marlar v. South Carolina, 375 S.C. 407, 653 S.E.2d 266, 267 (2007), South Carolina courts did not consistently apply a procedural bar based on a PCR applicant's failure to file a Rule 59(e) motion. See Bostick v. Stevenson, 589 F.3d 160, 164-65 (4th Cir. 2009). Here, however, the PCR court issued its order in 2010, long after the South Carolina Supreme Court's decision in Marlar.

prisoner's procedural default of a claim of ineffective assistance at trial." 132 S.Ct. at 1315.

The Court stated:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. Miller–El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue).

Id. at 1318-19. In Trevino v. Thaler, the Supreme Court described its holding in Martinez as follows:

> We consequently read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

133 S.Ct. 1911, 1918 (2013) (quoting Martinez, 132 S.Ct. at 1318-19, 1320-21); see also Sexton v. Cozner, 679 F.3d 1150, 1159 (9th Cir. 2012) (summarizing the Martinez test to require the following: "a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under Strickland, whether the petitioner's claim of ineffective assistance of trial counsel is substantial, and whether there is prejudice").

Here, the Magistrate Judge noted that Martinez is a *limited exception* that applies

only to the procedural default of a claim of *ineffective assistance of trial counsel*. See Clark

v. Cartledge, 2014 WL 1154585, *6 (D.S.C. March 19, 2014) (noting that Martinez applies

only to the procedural default of a claim of ineffective assistance of trial counsel); Blanding

v. Warden of McCormick Corr. Inst., 2013 WL 5316613, *17 (D.S.C. Sept. 20, 2013) ("Of

course, claims of trial court error, prosecutorial misconduct, and ineffective assistance of

appellate counsel are not affected by Martinez."). Thus, the Magistrate Judge determined

that Martinez does not excuse the procedural default of Reilly's ground three claims, which

allege prosecutorial misconduct. However, with respect to Reilly's ground two claim

alleging ineffective assistance of trial counsel based on the failure to object to the

intentional use of false testimony, the Magistrate Judge considered the merits of Reilly's

claim and determined that Reilly failed to demonstrate (1) that his PCR counsel was

ineffective for failing to raise the claim and (2) that the underlying ineffective assistance

claim was a substantial one. Therefore, the Magistrate Judge found that Reilly failed to

overcome the default of this claim pursuant to Martinez.

### *Prosecutorial Misconduct (Ground Three Claims)*

Reilly objects to the Magistrate Judge's conclusion that Martinez does not apply to

his prosecutorial misconduct claims. Specifically, Reilly contends that his trial counsel

failed to properly preserve his first prosecutorial misconduct claim and that his second

prosecutorial misconduct claim did not manifest itself until after the trial and the direct

review process.

Here, as the Magistrate Judge correctly noted, Martinez is a limited exception

that applies only to the procedural default of a claim of ineffective assistance of trial

counsel. See Martinez, 132 S.Ct. at 1315 (recognizing a "narrow exception" to Coleman by

13

recognizing that "[i]neffective assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial"). Although Reilly urges the Court to extend Martinez beyond claims of ineffective assistance to claims of prosecutorial misconduct, Reilly has pointed to no authority for doing so. Moreover, to the extent that Reilly attempts in his objections to re-phrase his first claim of prosecutorial misconduct as a claim of ineffective assistance—by alleging that trial counsel was ineffective for failing to preserve the issue of the prosecutor's alleged use of perjured testimony—the Court notes that claim three of ground two (where Reilly alleges that trial counsel was ineffective for failing to object to the intentional use of false testimony) already raises this issue. Ultimately, with respect to Reilly's ground three claims of prosecutorial misconduct, the Court agrees with the Magistrate Judge that Martinez does not excuse the procedural default of these claims, and the Court finds Reilly's objections on this point to be without merit. See Clark, 2014 WL 1154585, *6 (finding that Martinez does not establish cause excusing the procedural default of Clark's claim that his indictments were issued in violation of the South Carolina Rules of Criminal Procedure because Martinez applies only to the procedural default of a claim of ineffective assistance of trial counsel); Blanding, 2013 WL 5316613, *17; and Brown v. Warden of Perry Corr. Inst., 2013 WL 4585415, *6 (D.S.C. Aug. 28, 2013) (finding that Martinez cannot provide cause for the procedural default of claims for prosecutorial misconduct).

### Ineffective Assistance of Trial Counsel (Claim Three of Ground Two)

As an initial matter, a review of the transcript from the PCR hearing indicates that Reilly actually did raise the claim that trial counsel was ineffective for failing to object to the prosecutor's alleged intentional use of false testimony. (See Entry 20-7 at 105 ("[O]ne of

14

the claims I'm making is that I was (inaudible) by Mr. Creech not objecting to the use of false testimony to be reserved for direct appeal.").)  Nevertheless, in its order, the PCR court did not squarely address this issue.  Instead, the PCR court found, in a more general sense, that Reilly failed to meet his burden of proving that trial counsel failed to adequately point out inconsistencies in the witnesses' testimony.  (See Entry 20-8 at 7.)  The court noted "that it is not necessary to point out each and every inconsistency or omission in a witness's testimony," as "[t]he jury can clearly ascertain these purported contradictions in testimony."  (Id.)  Because the PCR court did not make specific findings of fact and conclusions of law on this claim, and because no Rule 59(e) motion was filed, the claim was not preserved for appellate review under the state procedural rules.

At this point, therefore, any ineffectiveness on the part of Reilly's PCR counsel would be based on PCR counsel's failure to file a Rule 59(e) motion regarding Reilly's claim that trial counsel was ineffective for failing to object to (and preserve the issue of) the prosecutor's intentional use of false testimony, specifically, testimony of Reilly's co-defendant, Larkin Bridges.  Because Martinez may apply to the procedural default of a claim of ineffective assistance of trial counsel, the Magistrate Judge considered whether Reilly overcame the procedural default of this claim pursuant to Martinez.  Ultimately, as previously mentioned, the Magistrate Judge determined that PCR counsel was not ineffective for failing to raise the claim and that the claim itself was not substantial.

Reilly objects to the Magistrate Judge's analysis of this claim, arguing that his PCR counsel was "glaringly ineffective" for failing to present and preserve this issue and that the underlying claim is substantial. (Entry 47 at 6.)  Reilly contends that the Magistrate Judge favored the Respondent's position and failed to take into account facts that support his

15

position.

After review, the Court agrees with the Magistrate Judge that Reilly has failed to show either that PCR counsel was ineffective for failing to raise the underlying claim of ineffective assistance or that the underlying claim is substantially meritorious to overcome the procedural default. As the Magistrate Judge noted, the record indicates that (1) the disputed testimony concerned the guilt of a co-defendant; (2) the state presented a witness to contradict the testimony; and (3) the state disputed the testimony in its closing argument. Moreover, although Reilly argues that his trial counsel failed to impeach the co-defendant who committed perjury, trial counsel strongly urged the jury during his closing argument to question the credibility of all of the witnesses, including Bridges, and trial counsel questioned the witnesses' motives in testifying, the truth of their testimony, and the consistency of their testimony. At the PCR hearing, trial counsel testified that he viewed the disputed testimony as a strength in the case. (See Entry 20-7 at 30-43; 123-34.)

Here, even assuming for the sake of argument that trial counsel's performance was deficient in this regard, the Court finds that Reilly has not shown that, if trial counsel had acted differently, there is a reasonable probability that the outcome of the trial would have been different. Likewise, the Court finds that Reilly has not shown that if PCR counsel had preserved the issue, there is a reasonable probability that the outcome of the state PCR proceeding would have been different. Thus, the Court agrees with the Magistrate Judge that Reilly has failed to show that PCR counsel was ineffective for failing to raise the claim or that the underlying claim "is a substantial one" with "some merit" sufficient to overcome the procedural default of the claim. See Martinez, 133 S.Ct. at 1918; Kirton v. Warden of MacDougall Correctional Inst., 2014 WL 3881055, *6 (D.S.C. Aug. 6, 2014) ("Petitioner has

16

not shown that his PCR counsel was ineffective under Strickland and that the underlying

ineffective claims of trial counsel are substantially meritorious to overcome the procedural

default of Grounds Two and Three.").  Accordingly, the Court overrules Reilly's objections

on this issue.

### Admissibility of Evidence: Ground One

In ground one, Reilly asserts that it was error for the trial court to admit evidence of

an unsuccessful attempt by him "to steal money the victim kept in a pig pen at his home

as evidence that the Petitioner was one of three masked men involved with a kidnapping

and assault of the victim and his workers while they were clearing land at the Clemson

ICAR facility." (Entry 1 at 4.)  In the R&R, the Magistrate Judge considered this claim and

determined that the trial court's decision did not unreasonably misapply clearly established

federal law and that the trial court's decision was not based on an unreasonable

determination of the facts in light of the evidence presented at the state court proceeding.

The Magistrate Judge outlined the relevant facts, including both the state trial court's and

the appellate court's findings on this issue, and ultimately determined that Reilly failed to

satisfy the standard in Barbe v. McBride, 521 F.3d 443, 452 (4th Cir. 2008) (quoting Burket

v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000)) ("Importantly, in considering federal

habeas corpus issues involving state evidentiary rulings, 'we do not sit to review the

admissibility of evidence under state law unless erroneous evidentiary rulings were so

extreme as to result in a denial of a constitutionally fair proceeding.'").

Reilly objects to the Magistrate Judge's analysis in whole and contends that this

ground is ripe for federal habeas review because "it is more than a mere state-court

determination on state-law questions." (Entry 47 at 7.)  Reilly argues that the trial court

17

abused its discretion in admitting the bad act evidence, and he refers to <u>United States v. McBride</u>, 676 F.3d 385 (4th Cir. 2012).

After review, the Court finds Reilly's objection to be wholly without merit. As the Magistrate Judge noted, the trial court ruled the evidence admissible at a pre-trial suppression hearing, stating:

> As to the issue of the 404(B) evidence, I'm going to allow it in under the basis that it constitutes res gestae, and I'm relying on the case of <u>State v. Adams</u>, which incorporated <u>State v. Masters</u>, which was a Fourth Circuit opinion. And it is res gestae because it does provide context for the crime. It gives a full picture to the jury. I find the probative value of the evidence outweighs the prejudicial effect . . . .
> [A]s to the previous alleged visits to the house, that to me rises to the level of <u>State v. Good</u> and <u>State v. Ford</u>, which allowed similar evidence. In those cases the court held that when there were prior incidents that targeted the same victim over a period of time, they could be admissible under <u>Lyle</u>. I think they're more properly admissible under res gestae, but the difference is unclear under the case law unfortunately. But certainly it shows that these events were interwoven. And they're not just similar. They are interwoven and it is an attempt to target the same victim, showing the same course of conduct and trying to allegedly rob the same person, which I think was the facts in <u>State v. Good</u> and <u>State v. Ford</u>. So that would be admissible.

(Entry 20-2 at 50-51.) At trial, over Reilly's objection, witnesses testified about the earlier attempted robbery, and the Magistrate Judge outlined this testimony in the R&R. On appeal, Reilly argued that the "prior attempt to steal money at Arledge's house does not constitute the res gestae of kidnapping and assault that took place miles away," and that the prior attempt is not so linked with the charged kidnapping and assault so that proof of one cannot be shown without proof of the other." (Entry 20-11 at 10-11.) Reilly also argued that the evidence did not fit an exception to Rule 404(b) and <u>Lyle</u>. (<u>Id.</u>) The South Carolina Court of Appeals rejected Reilly's argument pursuant to South Carolina state law, holding:

18

> Reilly maintains the trial court erred in allowing the State to introduce
> evidence of a prior bad act. We affirm pursuant to Rule 220(b), SCACR, and
> the following authorities: Rule 404(B), SCRE ("Evidence of other crimes,
> wrongs, or acts is not admissible to prove the character of a person in order
> to show action in conformity therewith. It may, however, be admissible to
> show motive, identity, the existence of a common scheme or plan, the
> absence of mistake or accident, or intent."); State v. Wilson, 345 S.C. 1, 6,
> 545 S.E.2d 827, 829 (2001) ("If there is any evidence to support the
> admission of the bad act evidence, the trial [court's] ruling will not be
> disturbed on appeal."); State v. Jenkins, 322 S.C. 414, 416, 472 S.E.2d 251,
> 252 (1996) (allowing evidence under the common plan or scheme exception
> where a close degree of similarity or connection existed between the bad act
> and the crime charged which enhanced the probative value of the evidence).

(Entry 20-13 at 2.)

In his objections, Reilly raises the same arguments the Magistrate Judge rejected, and after review, the Court agrees with the Magistrate Judge's rejection of those arguments. Stated simply, the evidence was not inadmissible as a matter of state law. See Anderson v. State, 354 S.C. 431, 581 S.E.2d 834 (S.C. 2003). As the Magistrate Judge noted, "[i]t is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68. Moreover, Reilly has not shown that the state court's adjudication of this issue pursuant to state law resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that the alleged evidentiary error, if there was one, was so extreme as to deny Reilly a constitutionally fair proceeding. 28 U.S.C. § 2254(d); see also Barbe, 521 F.3d at 452. As such, the Court finds that Reilly is not entitled to relief on ground one.

### Ineffective Assistance: Claims One and Two of Ground Two

In ground two, Reilly argues that his trial counsel was ineffective for: (1) failing to provide a copy of discovery materials pretrial; and (2) failing to point out inconsistent

19

identification testimony given by one of the alleged co-defendants and other witnesses.

### Claim One: Discovery Materials

At the PCR hearing, Reilly testified that he never received discovery materials from trial counsel prior to trial. (Entry 27 at 99.) Reilly's trial counsel testified that he received discovery from Reilly's prior attorney and the state and that he reviewed the contents of those materials with Reilly, including victim's statements, the co-defendants' statements, and Reilly's version of the story. (Id. at 117.) In its order, the PCR court found Reilly's testimony not credible while finding trial counsel's testimony credible. (Entry 20-8 at 6-7.) Accordingly, the PCR court found that Reilly failed to prove that his counsel's performance was deficient in this regard or that he was in any way prejudiced by counsel's performance.

In the R&R, the Magistrate Judge found that Reilly failed to demonstrate that the PCR Court unreasonably misapplied clearly established federal law or based its decision on an unreasonable determination of the facts in light of the evidence presented. The Magistrate Judge noted that on habeas review, a court does not apply Strickland to the facts de novo. Rather, habeas relief is appropriate only if "a state court's application of Strickland was unreasonable under § 2254(d)." Harrington v. Richter, 131 S.Ct. 770, 788 (2011); see also Schifferli v. South Carolina, 227 Fed. App'x 248, 250 (4th Cir. 2007) (finding the state court's resolution of Strickland issues "was not contrary to, or an unreasonable application of, federal constitutional law").

In his objections, Reilly reiterates his argument that trial counsel was ineffective for failing to provide him with discovery materials pre-trial. He contends that this error "resulted in the loss of a meaningful opportunity to confront the perjuring witness against him on cross-examination," and he claims that he easily met the Strickland standards at

PCR. (Entry 47 at 10.)

After review, the Court agrees with the Magistrate Judge that Reilly has failed to demonstrate that the PCR court misapplied clearly established law as decided by the Supreme Court or that the PCR court made objectively unreasonable factual findings. On the latter point, the Court notes that the PCR court found Reilly's testimony not credible and trial counsel's testimony credible, thereby concluding that Reilly had not proven that trial counsel failed to review discovery materials with him before trial. As the Fourth Circuit has instructed: "We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.'" Elmore v. Ozmint, 661 F.3d 783 (4th Cir. 2011) (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010), and Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)). Finding no misapplication of clearly established federal law and no "stark and clear" error in the PCR court's factual findings, the Court overrules Reilly's objections on this issue.

### Claim Two: Failure to Point out Inconsistent Testimony

In claim two of ground two, Reilly alleges that trial counsel was ineffective for failing to point out inconsistent identification testimony given by one of the alleged co-defendants and other witnesses. This claim relates to Reilly's claim that trial counsel failed to object to the prosecution's use of perjured testimony insofar as Reilly alleges that trial counsel failed to point out inconsistencies in the testimony. Reilly contends that he did not discuss the inconsistent testimony with trial counsel during trial but discovered the error while reading the trial transcript in prison.

In rejecting this claim, the PCR court stated:

21

This Court finds the Applicant did not meet his burden of proving trial counsel failed to adequately attack his co-defendants' credibility at trial. This Court finds trial counsel pointed out inconsistencies in the co-defendants' testimony–both on cross-examination and during closing argument. This Court notes that it is not necessary to point out each and every inconsistency or omission in a witness's testimony. The jury can clearly ascertain these purported contradictions in testimony. This Court further notes that it is often a benefit to one's case to simply point out the variances and comment on the lack of witness credibility. This Court finds that trial counsel highlighted the inconsistencies in the State's case to the jury, who weighed the evidence in their deliberations. See State v. Pipkin, 359 S.C. 322, 327, 597 S.E.2d 831, 833 (Ct. App. 2004) (noting the jury is "the finder of fact and weigher of credibility"). It is clear that regardless of the strong arguments made by trial counsel, the jury simply did not accept the defense's version of the events. See Craven v. Cunningham, 292 S.C. 441, 443, 357 S.E.2d 23, 25 (1987) ("The credibility of the witnesses is for the triers of fact."); see also Bruno v. State, 347 S.C. 446, 556 S.E.2d 393 (2001) (noting that, by its verdict, the jury clearly rejected the defendant's account of what transpired). The Applicant failed to point out any errors by trial counsel in this regard that prejudiced his case.

(Entry 20-8 at 7-8.) Also, as the Magistrate Judge noted, the PCR court remarked during

the PCR hearing:

Now, it looks to me like the credibility of the witnesses was at issue in this case. I don't know how much more clearly Mr. Creech could have addressed it when he goes in closing argument and, uh, he basically says, they are, Ladies and Gentlemen, burglars, they are thieves, they're robbers, they are folks you wouldn't trust at all, they are folks that we should be afraid of, they are folks that belong in the Department of Corrections, they are people that smoke marijuana, people that drink alcohol come in and testify to crucial events in this case and told all of us that they were under the influence of alcohol and drugs while they were proceeding [sic] the events in this case. How is that proof beyond reasonable doubt? We would laugh at them at any other place, maybe news of the weird. So I don't know how much strongly he could have said these are not credible witnesses.

(Entry 20-7 at 133 (paraphrasing trial counsel's closing argument, found on page 34 of

Entry 20-7).)

Reilly objects to the Magistrate Judge's findings on this issue and asserts that "the

trial record is completely silent of trial counsel pointing out any testimonial inconsistencies

22

between Larkin Bridges and J.B. Sanders in relation to the identification of the participants in the crimes being tried." (Entry 47 at 10 (emphasis in original).) Reilly contends that the R&R unfairly favors the Respondent, and he asserts that the trial record contradicts the PCR court's factual and legal determinations.

After a thorough review of the record, the Court overrules Reilly's objection. The PCR court evaluated Reilly's claim in view of the record before it, which indicates that both the prosecution and Reilly's counsel called the jury's attention to the need to carefully consider the testimony of the witnesses, including Bridges. For example, the prosecution admitted that Bridges had self-serving reasons to testify. (Entry 20-7 at 21-22 ("And you just heard from Larkin Bridges, and I'm going to come back to him, but he's an example of someone who has a lot to gain on all sides of this thing, both for himself, for his family and for other people."), and id. at 27 ("Ladies and gentleman, Mr. Bridges did not come forward until he was in a position where he thought he had to get the best he could for himself and everybody that he loved, not Mr. Reilly and not J.B. Sanders.").) Moreover, when Reilly's trial counsel made his closing argument, he went to great lengths to attack all of the witnesses' credibility, including Bridges. Trial counsel argued:



> This guy, Larkin Bridges, who took the stand this morning, did you see him? Did you see him when he asked the prosecutor, "How many victims were there, three or four?" Does that not give you pause for concern in a legal case? In a criminal case, proof beyond a reasonable doubt and the state's witness has come in here saying, "How many victims were there, three or four?" He comes in here and says, "I was reading the investigator reports" before he testified. Is he testifying from his own knowledge? That should give anyone—anyone—pause for concern, and we should never believe somebody like that. This guy, Larkin Bridges, he says that—what's his name?—J.B. Sanders was the one there. And that's the other thing with the state's case, we don't even have a clear picture as to what has happened.

(Id. at 35.) Trial counsel further remarked to the jury:

23

> As I said, these witnesses are burglars, they're thieves, they're people that shoot other people. They admit to it freely. They take drugs. They smoke pot. They have sex in the garage. They say one thing in their statements, then they say another thing on the stand. Nobody fully recalls anything whenever we ask them any questions. They tell a perfect story when the prosecutor gets up there. And then when I ask questions, they say they can't remember.

(Id. at 39.)

As the Supreme Court has stated, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). In addition, "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Harrington v. Richter, 131 S.Ct. 770, 788 (2011). In Harrington, the Court noted:

> The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S., at —, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id.

Here, Reilly essentially reiterates facts presented to and rejected by the PCR court. Upon careful review of the record, the Court notes that Reilly is correct that his trial counsel could have been more specific in attacking inconsistent identification testimony. Even so, however, the Court does not believe that trial counsel's performance was deficient under Strickland. See id. at 788 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.") (quoting Strickland, 466 U.S. at 690). Moreover, even

24

if the Court is incorrect and trial counsel's performance was deficient in this regard, Reilly has failed to demonstrate prejudice as a result of trial counsel's performance. See id. ("It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious' as to deprive the defendant of a fair trial, a trial whose result is reliable.'") (quoting Strickland, 466 U.S. at 693, 687). Thus, in giving the PCR court's order "considerable deference," the Court agrees with the Magistrate Judge that Reilly has failed to show that the PCR court unreasonably misapplied clearly established federal law or made objectively unreasonable factual findings. Accordingly, Reilly is not entitled to relief on this ground.

### CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Reilly's motion to set aside the Court's March 21 order and judgment (Entry 49) is granted, and the Court vacates its order dated March 21, 2014 (Entry 44). After consideration of Reilly's objections (Entry 47), the Court finds them to be without merit and finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the Court adopts the R&R (Entry 36) and grants the Respondent's motion for summary judgment (Entry 21).

**IT IS SO ORDERED.**

Sol Blatt, Jr.
Senior United States District Judge

September 16, 2014
Charleston, South Carolina

25

## Certificate of Appealability

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that this Court's assessment of the constitutional claims is debatable or wrong or that the issues presented were adequate to deserve further attention. See Miller–El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). Here, the Court finds that the Petitioner has not met the legal standard for the issuance of a certificate of appealability. Therefore, the Court denies a certificate of appealability.

